UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIERRA CLUB<br>85 Second St. 2nd Floor<br>San Francisco, CA 94105,<br><br>and<br><br>KENTUCKY ENVIRONMENTAL<br>FOUNDATION<br>P.O. Box 467<br>Berea, KY 40403<br><br>    Plaintiffs,<br><br>vs.<br><br>LISA P. JACKSON<br>in her Official Capacity as<br>Administrator<br>United States Environmental Protection Agency<br>Ariel Ross Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460<br><br>    Defendant. | ) Civ. No.- |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**I. INTRODUCTION**

1.  Plaintiffs SIERRA CLUB and KENTUCKY ENVIRONMENTAL FOUNDATION ("KEF") challenge the failure of Defendant LISA P. JACKSON, Administrator of the United States Environmental Protection Agency ("EPA") to perform mandatory duties required by the Clean Air Act, 42 U.S.C. §§ 7401-7671q. Specifically, first, EPA has a mandatory duty to take final action on the Kentucky State Implementation Plan submittal concerning the 1997 8-Hour

1

Ozone Standard for the Kentucky portion of the Huntington-Ashland Area (a portion of Greenup County), the Lexington Area (Fayette and Scott Counties), and Edmonson County ("Ozone Maintenance Plans"). Second, EPA has a mandatory duty to take final action on Kentucky's Regional Haze State Implementation Plan. EPA has failed to perform both mandatory duties. Sierra Club and KEF thus bring this action to prevent the health and welfare of their members and others from continuing to suffer unnecessary injury from ozone pollution and regional haze.

## II. JURISDICTION, VENUE AND NOTICE

2.      This case is a Clean Air Act citizen suit. Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).

3.      An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930. Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

4.      EPA is headquartered in the District of Columbia. Thus, the acts and omissions allegedly giving rise to the claims in this case occurred in this District. Furthermore, Defendant Lisa P. Jackson officially resides in the District of Columbia. Thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

5.      Sierra Club and KEF mailed to EPA by certified mail, return receipt requested, written notice of intent to sue regarding the violations alleged in this Complaint on March 15, 2010. EPA received this notice on March 19, 2010. More than sixty days have passed since Sierra Club and KEF mailed this notice of intent to sue letter. EPA has not remedied the violations

alleged in this Complaint. Therefore, a present and actual controversy exists between the parties and Sierra Club and KEF have provided notice as required under the Clean Air Act.

## III. PARTIES

6.      Plaintiff SIERRA CLUB is a national grassroots nonprofit conservation organization formed in 1872. Sierra Club's purpose includes practicing and promoting the responsible use of earth's ecosystems and resources, and protecting and restoring the quality of the natural and human environment.

7.      Sierra Club has over 750,000 members nationally and over 4,000 members in Kentucky. The Sierra Club has a statewide chapter based in Lexington, Kentucky called the Cumberland Chapter and five groups including a Bluegrass Group which covers Fayette and Scott Counties.

8.      Plaintiff KENTUCKY ENVIRONMENTAL FOUNDATION ("KEF") is a non-profit corporation organized under the laws of Kentucky and maintains its offices in Berea, Kentucky. KEF has worked for over 18 years to ensure the safe disposal of the Army's stockpile of outdated chemical weapons which are stored in Richmond, Kentucky and seven other sites throughout the nation. KEF also works to ensure that Kentucky has clean energy and that Kentuckians' exposure to toxic chemicals is minimized.

9.      Members and staff of Sierra Club and KEF live, work, recreate, and travel throughout the areas covered by the State Implementation Plans at issue in this case and will continue to do so on a regular basis. Ozone and regional haze in the affected areas threaten, and are anticipated to continue to threaten, the health and welfare of the Sierra Club's and KEF's staff and members. Sierra Club and KEF staff and members', as well as the public's, ability to enjoy the aesthetic qualities of Kentucky's picturesque landscape is diminished, and all are forced to breathe air that is below the minimum quality as required under the Clean Air Act ("the Act"). As a result, the

levels of ozone and regional haze in the affected areas threaten the health, welfare and economic interests of Sierra Club's and KEF's staff and members.

10.     EPA's failure to timely perform the mandatory duties described herein adversely affects the Sierra Club's and KEF's staff and members, depriving them of health, welfare and procedural protection and opportunities as well as information to which they are entitled to under the Act. The injuries will continue until the Court grants the relief requested herein.

11.     Defendant LISA P. JACKSON is the Administrator of the United States Environmental Protection Agency. In that role Administrator Jackson has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

## IV. GENERAL ALLEGATIONS

12.     The Clean Air Act aims to "protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). To promote this, the Act requires the Administrator to set National Ambient Air Quality Standards for certain pollutants, including ozone. National Ambient Air Quality Standards establish maximum allowable concentrations in the air of these pollutants.

13.     Each National Ambient Air Quality Standard must be stringent enough to prevent adverse effects on public health and welfare. Effects on welfare include, but are not limited to, effects on soils, water, vegetation, manmade materials, wildlife, visibility (that is haze), damage to property, economic impacts, and effects on person comfort and well-being.

14.     Pursuant to 42 U.S.C. § 7407(d)(1)(A), areas that fail to meet the National Ambient Air Quality Standard for a pollutant must be designated "nonattainment" for that pollutant, while those that meet the standard must be designated as "attainment." *See e.g., Sierra Club v. E.P.A.*, 129 F.3d 137, 138 (D.C. Cir. 1997). States must then submit State Implementation Plans to

maintain pollution levels below the National Ambient Air Quality Standard in attainment areas and to bring down pollution levels to below the National Ambient Air Quality Standard in nonattainment areas. *See South Coast Air Quality Management Dist. v. E.P.A.*, 472 F.3d 882, 887 (D.C. Cir. 2006) (discussing ozone nonattainment requirements found in 42 U.S.C. §§ 7511-7511f that apply to areas failing to reach attainment by the 1990 Clean Air Act Amendments); *see also Sierra Club v. EPA*, 129 F.3d at 138 ("EPA must establish…a schedule by which the state must submit a [State Implementation Plan] revision that complies with the requirements for nonattainment areas in order to attain the [National Ambient Air Quality Standard]….") (citation omitted).

15. The first National Ambient Air Quality Standard for ozone was a 1-hour standard promulgated in 1979. 40 Fed. Reg. 8202 (Feb. 8, 1979). In 1997, EPA replaced the 1979 1-hour standard with an 8-hour standard. 62 Fed. Reg. 38855 (July 18, 1997). The ozone National Ambient Air Quality Standards are intended to protect public health and welfare.

16. Pursuant to 42 U.S.C. § 7410(a)(1), areas previously designated as nonattainment for the 1-hour NAAQS are required to submit a maintenance plan within three years of their designation as attainment for the 8-hour NAAQS. *See* 69 Fed. Reg. 23951, 23955 (April 30, 2004) (Phase 1 Rule).

17. EPA designated the Huntington-Ashland area (a portion of Greenup County), Lexington area (Fayette and Scott Counties), and Edmonson County nonattainment for the 1-hour ozone NAAQS effective Jan. 6, 1992. 56 Fed. Reg. 56694, 56762-67 (Nov. 6, 1991).

18. EPA approved the redesignation request to attainment for the 1-hour ozone standard for the Huntington-Ashland area (a portion of Greenup County) in 1995. 60 Fed. Reg. 33748 (June 29, 1995).

19. EPA approved the redesignation request to attainment for the 1-hour ozone standard for the Lexington (Fayette and Scott Counties) area in 1995. 60 Fed. Reg. 47089 (Sept. 11, 1995).

20. EPA approved the redesignation request to attainment for the 1-hour ozone standard for Edmonson County in 1994. 59 Fed. Reg. 55053 (Nov. 3, 1994).

21. EPA designated the Huntington-Ashland area (a portion of Greenup County) as attainment for the 8-hour standard in 2004. 69 Fed. Reg. 23857, 23906 (April 30, 2004).

22. EPA designated the Lexington area (Fayette and Scott Counties) as attainment for the 8-hour standard in 2004. *Id.* at 23905-23906.

23. EPA designated Edmonson County as attainment for the 8-hour standard in 2004. *Id.* at 23905.

24. Regional haze is "visibility impairment caused by geographically dispersed sources emitting fine particles and their precursors into the air." *American Corn Growers Ass'n v. E.P.A.*, 291 F.3d 1, 4 (D.C. Cir. 2002) (citing 64 Fed. Reg. 35714, 35715 (July 1, 1999)). This includes the "emission and movement of sulfur dioxide, oxides of nitrogen, and fine particulate matter from sources, such as power plants...." *Id.* (citation omitted).

25. Regional haze has reduced visibility in Class I areas, which "include all international parks, national wilderness areas which exceed 5,000 acres in size, national memorial parks which exceed 5,000 acres in size and national parks which exceed 6,000 acres in size and which were in existence on August 7, 1977." *Id.* at 3, n.1. "Mandatory Class I Federal areas" are defined as "Federal areas which may not be designated as other than class I...." 42 U.S.C. § 7491(g)(5).

26. Pursuant to 42 U.S.C. § 4791, EPA first promulgated visibility regulations in 1980. 45 Fed. Reg. 80084 (Dec. 2, 1980). EPA revised the regulations in 1999 to address regional haze. 64 Fed. Reg. 35714 (July 1, 1999) (hereinafter "Regional Haze Rule").

27. The Regional Haze Rule requires states in which Class I areas are located to submit revised State Implementation Plans that "develop programs to assure reasonable progress toward meeting the national goal of preventing any future, and remedying any existing, impairment of visibility in mandatory Class I Federal areas which impairment results from manmade air pollution; and to establish necessary additional procedures for new source permit applicants, States and Federal Land Managers to use in conducting the visibility impact analysis...." 40 C.F.R. § 51.300(a) (1999).

28. The Regional Haze Rule is applicable to Kentucky. 40 C.F.R. § 51.300(b)(2)(2009).

## V. CLAIMS FOR RELIEF

### CLAIM ONE
(EPA's Failure to Take Final Action Pursuant to 42 U.S.C. § 7410(k)(2) on Kentucky's Ozone Maintenance Plan)

29. Plaintiffs incorporate paragraphs 1 through 28 as though fully set forth herein.

30. The Clean Air Act requires EPA to make a finding as to whether a State Implementation Plan submittal complies with the requirements of 42 U.S.C. § 7410(a)(2) within six months of the submittal deadline. 42 U.S.C. § 7410(k)(1)(B). This is known as the completeness finding. If EPA does not determine that a State Implementation Plan submittal fails to "meet the minimum criteria" required by the Act within six months, the submittal is deemed administratively complete by operation of law. 42 U.S.C. § 7410(k)(1)(B).

31. EPA must take final action on a State Implementation Plan submittal within 12 months of the completeness finding by approving in full, disapproving in full, or approving in part and disapproving in part. 42 U.S.C. § 7410(k)(2).

32. Kentucky submitted State Implementation Plan submittals called the 8-hour Ozone Maintenance Plans for the Huntington-Ashland area (a portion of Greenup County), the Lexington area (Fayette and Scott Counties), and Edmonson County on May 27, 2008. *See* 74 Fed. Reg. 12567, 12568 (March 25, 2009).

33. Thus, pursuant to 42 U.S.C. § 7410(k)(2) Congress required EPA to take final action on Kentucky's 8-hour Ozone Maintenance Plan by approving in full, disapproving in full, or approving in part and disapproving in part by no later than November 27, 2009.

34. Though EPA issued a Direct Final Rule to approve Kentucky's 8-hour Ozone Maintenance Plan submittal, 74 Fed. Reg. 12567, EPA withdrew the rule after receiving adverse comments. 74 Fed. Reg. 20601 (May 5, 2009).

35. Thus, the November 27, 2009 deadline for EPA to take final action on Kentucky's 8-hour Ozone Maintenance Plan still applies.

36. EPA has failed to take final action by not approving in full, disapproving in full, or approving in part and disapproving in part Kentucky's 8-hour Ozone Maintenance Plan State Implementation Plan submittals.

37. Accordingly, EPA is in violation of the mandatory duty in section 110(k)(2) to take action on State Implementation Plan submissions. This violation of a mandatory duty is ongoing.

CLAIM TWO
(EPA's Failure to Take Final Action Pursuant to 42 U.S.C. § 7410(k)(2) on Kentucky's Regional Haze Plan)

38. Plaintiffs incorporate paragraphs 1 through 28 as though fully set forth herein.

39. EPA is required to make a finding as to whether a State Implementation Plan submittal complies with the requirements of 42 U.S.C. § 7410(a)(2) within six months of the submittal deadline, known as the completeness finding. 42 U.S.C. § 7410(k)(1)(B). If EPA does not determine that a State Implementation Plan submittal fails to "meet the minimum criteria" required by the Act within six months, the submittal is deemed administratively complete by operation of law. 42 U.S.C. § 7410(k)(1)(B).

40. EPA must take final action on the State Implementation within 12 months of the completeness finding by approving in full, disapproving in full, or approving in part and disapproving in part. 42 U.S.C. § 7410(k)(2).

41. Kentucky submitted a Regional Haze State Implementation Plan on June 25, 2008.

42. Thus, pursuant to 42 U.S.C. § 7410(k)(2), Congress required EPA to take final action on Kentucky's Regional Haze submittal by approving in full, disapproving in full, or approving in part and disapproving in part by no later than December 25, 2009.

43. EPA has failed to take final action by not approving in full, disapproving in full, or approving in part and disapproving in part Kentucky's Regional Haze Plan.

44. Accordingly, EPA is in violation of the mandatory duty pursuant to 42 U.S.C. § 7410(k)(2) to take action on a plan submission. This violation of a mandatory duty is ongoing

### REQUEST FOR RELIEF

WHEREFORE, Sierra Club and KEF respectfully request that the Court:

A.  Declare that the Administrator is in violation of the Clean Air Act with regard to her failure to perform each mandatory duty listed above;

B.  Issue a mandatory injunction requiring the Administrator to perform these mandatory duties by a certain date;

C. Retain jurisdiction of this matter for purposes of enforcing the Court's order;

D. Grant Sierra Club and KEF their reasonable costs of litigation, including their attorneys' and expert witness fees; and

E. Grant such further relief as the Court deems proper.

Respectfully submitted,

/s Robert Ukeiley

Robert Ukeiley
Law Office of Robert Ukeiley
435R Chestnut Street, Ste. 1
Berea, KY 40403
Tel: (859) 986-5402
Fax: (866) 618-1017
Email: rukeiley@igc.org

Counsel for Sierra Club and KEF

Dated: May 24, 2010